FILED
MAY 1 7 2005
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

1  Juan Morgan, pro se
2  ~~Case 77~~
3  Fort Clayton
4  Panama City, Panama
5  011-507-673-4827
6
7
8  UNITED STATES DISTRICT COURT
9  DISTRICT OF COLUMBIA
10
11
12  JUAN MORGAN
13  ~~Casa 77~~ PSC 2 Box 2814
14  ~~Fort Clayton~~ APO AA 34002
15  ~~Panama City, Panama~~
16  011.507.673.4827   Plaintiff,
17  678.571.1419 (USA)
18         v.
19
20  MIKE JOHANNS, SECRETARY,
21  UNITED STATES DEPARTMENT OF
22  AGRICULTURE
23  1400 Independence Avenue, S.W.
24  Washington, DC 20250-1400
25
26
27         Defendant.
28
29

CASE NUMBER: 1:05CV0989

JUDGE: ROYCE C. LAMBERTH

DECK TYPE: EMPLOYMENT DISCRIMINATION

DATE: MAY 17, 2005

COMPLAINT
With Jury Demand

JURY ACTION

30     The plaintiff pro se complains of the defendant as follows.

31     1. This court has jurisdiction over this matter as the United States is a party and

32  plaintiff has filed claims with the defendant and more than 120 days has expired without

33  a final agency decision.

34     2. Venue is proper in this court as the plaintiff is a non-resident citizen of the

35  United States.

36     3. Plaintiff is a Hispanic African American Citizen of the United States of who

37  resides in Panama City, Panama who retired as a Lieutenant Colonel and is a veteran with

38  more than a 30% service related disability.

4. The Defendant Mike Johanns is the Secretary of Agriculture of the United States here sued in his official capacity. Dr. Angel B. Cielo, Dr. Harold C. Hoffmannn, Dr. John H. Wyss, Mr. James Swenson, Mr. Ralph H. Iwamoto, Ms. Freita S. Skaggs and Mr. Craig Fedchock are defendant's management staff who were personally responsible by omission or commission for the specific acts complained of hereinafter but who were operating at all times within their management capacity and with the full approval and knowledge of the defendant's predecessor.

## AS AND FOR A FIRST CAUSE OF ACTION

5. Plaintiff realleges and restates each and every allegation set forth above as if set forth in full here.

6. On July 2, 2000 plaintiff was hired by the defendant as the financial officer of the Animal and Plant Health Inspection Service (APHIS), International Service Region 5 with a duty station in Panama City, Panama.

7. Despite being entitled to a Career-Candidate or Career appointment due to his status as a disabled veteran, due to his race and national origin plaintiff was given a temporary appointment.

8. At all times relevant hereto the plaintiff was an experienced financial officer with extensive and successful experience in diplomatic and military command roles and was fully capable of performing the tasks assigned to him and did in fact fully perform such tasks.

9. Due to his race and ethnicity however, plaintiff was ostracized by management, ignored at finance-related meetings, the subject of verbal harassment from management simply for doing what the directives and federal regulations state he should

do. He was ignored when the defendant's staff hired people to work in his department. Plaintiff was the only management staff not invited to social events and important meetings. He was the only one in management treated in this manner. He was the only person of African descent within the US management staff in that office.

10. In furtherance of their desire to rid their office of a Hispanic-African American the defendants supervisors failed to follow any rules and regulations related to evaluating employees when it came to the plaintiff. APHIS Directive 4430.2 states under "General Guidelines" that there will be an Annual Assignment and Achievement Expectations Letter which is to be presented to every employee at the beginning of each rating period. This letter is developed annually by the supervisor and employee as a collaborative effort and is signed by both as an indication of their commitment to the agreement. Without such letter there is no foundation for any evaluation of an employee's performance. Plaintiff received only one such letter from his immediate supervisor, Mr. Swenson and it was received long after he was employed and immediately before his first evaluation by the supervision of the Panama City office.

11. Plaintiff's first review was satisfactory.

12. Due to his race and ethnicity, no one wanted to deal with the plaintiff and therefore he was not informed of the identity of his reviewer, i.e. second line supervisor and therefore had no idea at any time who was responsible for evaluating his performance. Over the term of plaintiff's employment, supervisors increasingly refused to communicate with him. In documents generated during the internal investigation of the plaintiff's claims the management staff could not agree on who plaintiff's reviewer was. They admitted that no matter who it was at any given time, i.e. who was reviewing

the plaintiff; no one ever told the plaintiff who it was. This fact, however, rendered compliance with regulations absolutely impossible and evidenced the extremely hostile nature of the work environment the plaintiff was exposed to due to his race and ethnicity.

13. Despite having not followed any legally imposed criteria, supervisors within the Panama City office prepared evaluations of the plaintiff which were increasingly critical of his performance, conduct and behavior, however, these were prepared by persons who were not plaintiff's proper reviewer as they had neither clear supervisory responsibility over the plaintiff nor did they have sufficient involvement with plaintiff to prepare an accurate review and in all cases after plaintiffs first evaluation, these reviews were not based upon the plaintiff's performance but were framed to force the plaintiff to leave the agency due to his race and ethnicity and indeed if they reflected anything they reflected the effects of the extremely hostile work environment created by the management of the Panama City office.

14. In 2002, plaintiff sought permanent status in the Foreign Service of the defendant. Upon learning of plaintiff's application, the defendant's management staff in Panama City with the aid of officials in Rockville went into overdrive to prevent the plaintiff's appointment. Dr. Hoffmann wrote one of several of what purported to be evaluations of the plaintiff recommending that he not get a permanent appointment. Dr. Hoffmann stated that plaintiff was unable to serve the agency due to a lack of diplomatic skills and due to a major misrepresentation as to the health of plaintiff's daughter, who was recovering from cancer treatment (indeed, while having to use considerable leave due to his daughter's battle with cancer, plaintiff continued to supervise his staff and all work required to discharge his duties was completed competently and on time due to such

1   supervision a fact not mentioned in these reports). Indeed, plaintiff had been promoted to
2   the rank of Lieutenant Colonel in the United States Army due to his service which
3   involved diplomatic operations in the same theatre, i.e. Central America and the
4   Caribbean. He served with great success in assignments which required liaison with host
5   nations in providing military and other aid, a task similar to the mission of APHIS.
6   Plaintiff, not only was an experienced diplomat, he was perhaps the most competent
7   diplomat in the employ of the defendant in Panama. In marked contrast to this racially
8   and ethnically motivated slander authored by supervisors from the Panama City office, an
9   outside auditor who observed the operation of the office and the plaintiff's performance
10  for the Agency, recommended that plaintiff's responsibilities should be significantly
11  expanded to encompass the entire Caribbean. But within the Panama City office, due to
12  his status as the only African American - Hispanic on the staff, plaintiff's reports of
13  unaccounted for funds, funds spent on items of doubtful legitimacy and misconduct in the
14  office involving fellow officials and a female subordinate were deemed unacceptable and
15  disruptive even though the plaintiff was lawfully discharging his duties with regard to
16  these activities. Indeed, after an audit conducted by the plaintiff uncovered large scale
17  gaps in records of petty cash at several in country offices, rather than address the
18  problem, plaintiff, due to his race and ethnicity was ordered to cease such audits, a clear
19  direction not to do his job. APHIS management had expected plaintiff to be a subservient
20  African American – Hispanic, finance manager whose sole role was to improve the
21  office's EEO image and who was expected to be willing to forgo regulations so that
22  members of American APHIS management could ingratiate themselves to in country
23  personnel and officials who were abusing the program. The comments by Dr. Hoffmann

5

1   and others were grossly incorrect and malicious and based upon disappointment that
2   plaintiff, an African American of Hispanic descent was in fact a competent and dedicated
3   financial officer who insisted on competently doing his job according to the applicable
4   laws, rules and regulations and who as a competent diplomat was able to do it even with
5   regard to in country staff.

6   15. Solely due to these slanderous and inaccurate reports, each prepared and
7   submitted in violation of applicable regulations and in violation of regulations applicable
8   to the employment of disabled military veterans, plaintiff was denied a permanent foreign
9   service appointment and his ability to continue with the agency was rendered difficult if
10  not impossible. This difficulty was increased by the increasingly hostile work
11  environment created by the management of the Panama City office, joined now by the
12  complicity of staff in Rockville. The report by Dr. Hoffmann was credited by the
13  promotion board even though the document itself as well as the evaluations of the
14  plaintiff in his file conspicuously failed to display compliance with regulations. Dr.
15  Hoffmann was not the plaintiff's supervisor, had performed none of the necessary steps
16  to file an evaluation of the plaintiff at any time, and therefore, not only was the report
17  malicious and slanderous, it was from a person without the status to submit it, all gross
18  violations of the applicable rules and regulations, which rules and regulations were
19  ignored at all stages of the evaluation process due to the plaintiff's race and ethnicity.

20  16. From the date that plaintiff sought permanent status, the hostility of the work
21  environment became absolute. Plaintiff was completely isolated by Agency management
22  to the point that he was not even aware that he had been rejected for permanent status due
23  to a reports from Dr. Hoffmann and other management staff for months.

17. In addition to the report which denied plaintiff a permanent appointment, defendant's staff prepared a series of evaluations of the plaintiff which were grossly false and designed to force the plaintiff out of APHIS. The rules governing the preparation of such reports require employee participation in the evaluation process, APHIS Directive 4430.2, communication with the employee is an absolutely necessary first step under the regulations to evaluate anyone. However, not only did the defendant's staff fail to seek input from the plaintiff in this process, plaintiff was never told who his reviewer was. Thus, not only were these evaluations not based upon a timely expectations letter, they were not preceded by mid-year evaluations, they were not preceded by an employee improvement plan, they were not submitted to plaintiff for his comments or even discussed with him and they were authored by persons who had not been plaintiff's reviewer during the period reviewed and whose status was unknown to plaintiff. This absolute lack of regard for all the applicable federal regulations was due exclusively to the plaintiff's race and ethnicity which caused his absolute isolation within the Panama City office of APHIS.

18. Due to the strain of going from the United States Army, which is race neutral, to the defendant, and in particular the APHIS office in Panama City, in which plaintiff's race and ethnicity caused the defendants to create or tolerate a hostile work environment which saw the plaintiff ostracized and then his career destroyed by the malicious and unlawful acts of the defendant's supervisory personnel, plaintiff suffered a nervous break down and deterioration of his mental health with a related major exacerbation of conditions related to his preexisting physical disability eventually rendering plaintiff unemployable.

7

1   19. Due to the reports prepared and submitted by defendant's supervisors in Panama City and the complicity of staff in Rockville and due to the defendant's pointed refusal to deal with the conduct of such supervisors despite notice, defendant terminated the plaintiff's foreign service appointment and ordered him to return to the United States to an undefined Civil Service Job in Maryland. Defendant knew, when it took this action, that the plaintiff would be unable to comply with that demand due to his family situation and due to his increasingly disabling health problems which health problems were the direct result of the defendant's discriminatory actions. Despite the defendant's liability for the plaintiff's disability plaintiff was forced to resign or face a proceeding which would have resulted in his termination, making his reemployment with any Federal Agency difficult if not impossible thereafter.

20. Plaintiff has been rendered unemployed and unemployable due to the direct and indirect effects of the defendant's overt discrimination against him due to his race and national origin. By reason of the above the plaintiff has been damaged in a sum which can not be established at this time but which is believed to exceed five million dollars, ($5,000,000.00) due to loss of pay and the benefits afforded to foreign service employees and their families as well as due to his resulting physical and mental injuries and for three hundred thousand ($300,000.00) on each of the three complaints plaintiff filed with the defendant seeking in house resolution of the matters here complained of.

AS AND FOR A SECOND CAUSE OF ACTION

21. Plaintiff realleges and restates each allegation contained in paragraphs 1-20 above as if set forth here in full.

22. Dr. Angel B. Cielo, Dr. Harold C. Hoffmannn, Dr. John H. Wyss, Mr. James Swenson, Mr. Ralph H. Iwamoto, Ms. Freita S. Skaggs and Mr. Craig Fedchock were at all times acting within their responsibilities as employees of the defendant.

23. The discriminatory and unlawful actions of Dr. Angel B. Cielo, Dr. Harold C. Hoffmannn, Dr. John H. Wyss, Mr. James Swenson and Mr. Ralph H. Iwamoto were called to the attention of the defendant on several occasions, which complaints were formal and informal and handled by Ms. Freita S. Skaggs and Mr. Craig Fedchock. No action was taken by the defendant to deal with the situation in the Panama City office.

24. Dr. Angel B. Cielo, Dr. Harold C. Hoffmannn, Dr. John H. Wyss, Mr. James Swenson and Mr. Ralph H. Iwamoto conspired with each other from shortly after the date the plaintiff arrived in the Panama City office of APHIS to force the plaintiff out of the foreign service of the defendant due to his race and ethnicity. No action was taken by Ms. Freita S. Skaggs and Mr. Craig Fedchock to deal with this matter and indeed at some time, by omission or commission they joined the conspiracy by ignoring the gross violations of defendant's rules and federal laws and regulations involved and taking action to force the plaintiff to resign or face a discharge for cause, fully aware that the "cause" was the direct result of the hostile work environment which arose in the Panama City office due to the plaintiff's race and ethnicity which the defendant had tolerated in gross violation of the law and the aforesaid regulations.

25. Dr. Angel B. Cielo, Dr. Harold C. Hoffmann, Dr. John H. Wyss, Mr. James Swenson and Mr. Ralph H. Iwamoto intentionally conducted a campaign of harassment of the plaintiff, creating an increasingly hostile work environment which included complete isolation, failing to inform him as to who his reviewer was, failing to

communicate with him as to any aspect of his work or performance except briefly and in bad faith when forced to do so due to the recommendation of an outside consultant, creating and filing untrue reports concerning plaintiff's conduct and performance in flagrant violation of all applicable federal regulations and defendant's rules, disparaging of his status, failing to provide him with a written description of his duties, failing to consult with him on employees hired to work in his department, failing to notify plaintiff of important management meetings where financial issues which the plaintiff was responsible for were discussed, contacting plaintiffs staff directly for information within the plaintiff's area of responsibility and allowing members of plaintiff's staff to be sexually harassed in the face of the plaintiff's attempts to end such practices by in country supervision. The defendant's activity was openly hostile to the plaintiff and designed to cause all employees in the office to know that the plaintiff was to be isolated and ignored even where they're duties would dictate otherwise, all so that the plaintiff could be denied permanent status and be terminated from employment.

26. All of these actions and inactions were designed to isolate the plaintiff, to prevent him from discharging his duties and to inform plaintiff's staff and that of the host country that plaintiff was to be ignored and that his attempts to end abusive financial and personnel practices were not to be taken seriously.

27. Defendant intended to and did inflict mental and resulting physical harm on the plaintiff.

28. By reason of the above and particularly due to the defendant's failure to respond to formal and informal notice of these activities, the plaintiff has been injured in a sum which cannot be finally determined now but which is estimated to be no less than

1  five million dollars, ($5,000,000.00) due to being rendered unemployable and for the

2  additional sum of three hundred thousand dollars ($300,000.00) for pain and suffering on

3  each of the three formal complaints the plaintiff filed within the defendant's EEO process

4  with regard to these unlawful practices.

5

6              AS AND FOR A THIRD CAUSE OF ACTION

7    29.  Plaintiff realleges and restates each and every allegation contained in

8  paragraphs 1-26 as if set forth here in full.

9    30. Plaintiff as an employee of the defendant was entitled to the protection of the

10 defendant's rules and regulations.

11   31. Dr. Angel B. Cielo, Dr. Harold C. Hoffmannn, Dr. John H. Wyss, Mr. James

12 Swenson Mr. Ralph H. Iwamoto, Ms. Freita S. Skaggs and Mr. Craig Fedchock failed

13 and refused to comply with any of the applicable rules and through a pattern of such

14 disregard, denied plaintiff a permanent appointment to the Foreign Service of the

15 defendant.

16   32. Plaintiff has suffered an injury which is of the type the rules were designed to

17 prevent.

18   33. In contrast the plaintiff has adhered to all applicable rules and has been

19 denied relief from this injustice by the defendant.

20   34. At all times relevant to this proceeding the plaintiff was fully qualified to be

21 appointed to the defendants foreign service and would have received such appointment

22 and would have advanced within the service, as he had in the United States Army, had

23 the rules been followed.

1  35. By reason of the above the plaintiff has been injured by the defendant in a
2  sum which can not be estimated here but which should not be less than five million
3  dollars ($5,000,000.00).

4  Wherefore the plaintiff requests a trial by jury and judgment in his favor and
5  against the plaintiffs in a sum which can not be fully stated at this time but which is
6  estimated to exceed five million dollars in economic injuries and three hundred thousand
7  dollars for each of three formal complaints filed within the agency on the first cause of
8  action, for five million dollars in economic injuries and three hundred thousand dollars
9  for each of three formal complaints filed within the agency on the second cause of action
10 and for five million dollars on the third cause of action together with his costs and
11 attorneys fees incurred in this proceeding and in all proceedings before the agency and
12 for such further relief as is allowed by applicable law.

13                             JURY DEMAND

14  Plaintiff demands a jury to resolve all issues raised in this matter.

15 Dated, Washington, DC.
16     May 16, 2005

Juan Morgan, Pro-Se
Casa 77
Fort Clayton
Panama City, Panama
Panama 011-507-673-4827
When in US 678-571-1419